IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TROY E. W., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 23-cv-00317-SH |
| MARTIN J. O'MALLEY,[1] Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Troy E. W. seeks judicial review of the decision of the Commissioner of Social Security (the "Commissioner") denying his claim for disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–434. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court reverses and remands the Commissioner's decision denying benefits.

**I.     Disability Determination and Standard of Review**

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment(s) must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any

---

[1] Effective December 20, 2023, pursuant to Fed. R. Civ. P. 25(d), Martin J. O'Malley, Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 404.1520. To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do his past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 404.1520(a)(4)(i)–(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The

Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II. Background and Procedural History

Plaintiff applied for Title II disability benefits on January 4, 2022. (R. 214–15.) In his application, Plaintiff alleged he has been unable to work since February 9, 2016,[2] due to conditions including bipolar disorder, depression, posttraumatic stress disorder ("PTSD"), bulging discs in his lower back, and chronic pain. (R. 214, 235.) Plaintiff was 47 years old on his last insured date of September 30, 2021. (R. 13, 214.) Plaintiff has a high school education and past relevant work as a welder. (R. 236, 66.)

Plaintiff's claim was denied initially and upon reconsideration. (R. 117–21, 123–27.) Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). (R. 128–29, 39–70.) The ALJ denied benefits and found Plaintiff not disabled. (R. 10–26.) The Appeals Council denied review on May 23, 2023 (R. 1–5), rendering the Commissioner's decision final, 20 C.F.R. § 404.981. Plaintiff now appeals.

## III. The ALJ's Decision

In his decision, the ALJ found Plaintiff met the insured requirements for Title II purposes through September 30, 2021. (R. 13.) The ALJ then found at step one that

---

[2] Plaintiff later amended his alleged onset date to September 10, 2020. (R. 46–47.)

3

Plaintiff had not engaged in substantial gainful activity between the alleged onset date and his date last insured. (*Id.*) At step two, the ALJ found Plaintiff to have the following severe impairments: (1) opiate use disorder; (2) major depressive disorder (with a history of bipolar disorder); (3) PTSD; (4) lumbar strain; (5) degenerative disc disease of the cervical spine; and (6) mild degenerative disc disease of the lumbar spine, status post fusion surgery. (R. 13–14.) At step three, the ALJ found Plaintiff's impairments did not meet or equal a listed impairment. (R. 14–16.)

The ALJ then determined Plaintiff had the RFC to perform light work with certain environmental and postural limitations, and the following mental limitations: "[Claimant] could understand, remember, and carry out simple instructions, and he was limited to occasional interaction with coworkers, supervisors, and the public." (R. 16.) The ALJ provided a recitation of the evidence that went into this finding. (R. 16–24.) At step four, the ALJ found Plaintiff unable to perform his past relevant work. (R. 24.) Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other work that existed in significant numbers in the national economy, such as small products assembler, mailroom clerk, and price marker. (R. 25–26.) Accordingly, the ALJ concluded Plaintiff was not disabled. (R. 26.)

## IV.   Issues

Plaintiff's brief ostensibly raises two issues of error, arguing the ALJ erred in his consideration of the prior administrative medical findings and the ALJ failed to properly assess Plaintiff's symptoms. (ECF No. 9 at 3.) However, in the body of his brief, Plaintiff raises additional purported errors. These appear to include arguments regarding the ALJ's assessment of Plaintiff's physical RFC (*id.* at 7–10) and the inconsistency between the mental RFC and representative jobs found at step five (*id.* at 5–7, 14–15).

Plaintiff's counsel is <u>again</u> cautioned about the failure to comply with LCvR 5-1 and its associated procedures.[3]  Blending several claimed errors into a single issue "is a dangerous practice, because we are not required to speculate on what a party is arguing or craft [his] arguments for [him]." *Eacret v. Barnhart*, 120 F. App'x 264, 265–66 (10th Cir. 2005) (unpublished).[4]

The Court finds, however, that Plaintiff adequately raised his step-five argument such that the Commissioner could discern and respond.  (ECF No. 11 at 20–22.[5])  As the Court finds the Commissioner committed reversible error as this step, it will not address Plaintiff's other arguments.

## V.     Analysis

### A.     Step-Five Jobs and Conflict with the DOT

Plaintiff argues that "a limitation to simple instructions is *inconsistent* with level two and level three reasoning" (ECF No. 9 at 5) and that the ALJ erred in finding Plaintiff could perform jobs with such reasoning levels (*id.* at 7, 15).  The Commissioner appears to concede that the RFC is inconsistent with the level-three reasoning required by the mailroom clerk job (ECF No. 11 at 21), but argues the remaining level-two jobs—small products assembler and price marker—are consistent with Plaintiff's RFC (*id.* at 20–21). The Commissioner further argues that the Court can find the number of remaining jobs

---

[3] *See Administrative Procedures for Social Security Actions under 42 U.S.C. § 405(g)*, https://www.oknd.uscourts.gov/administrative-procedures-actions-under-42-usc-405g (last visited September 17, 2024).  In section II of a plaintiff's opening brief, the "plaintiff must list and number each specific error the Commissioner or ALJ made in concluding that the plaintiff was not disabled." *Id.* at 1.  In section III, the "plaintiff should include a separate subsection for each error listed in Section II." *Id.*

[4] Unpublished decisions are not precedential, but they may be cited for their persuasive value.  10th Cir. R. 32.1(A).

[5] Citations refer to the page number in the Court-provided header.

significant as a matter of law (i.e., harmless error).  (*Id.* at 21–22.)  The Court agrees that the level-three job is inconsistent with the RFC and finds this error was not harmless.

### 1. Step Five

Once a claimant meets his burden of showing he cannot perform his past relevant work at step four, the Commissioner has the burden "at step five to show that the claimant retains sufficient RFC to perform work in the national economy, given [his] age, education, and work experience."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005) (alteration omitted)).  An ALJ may rely on the testimony of a VE to satisfy this step-five burden and identify jobs that a claimant can perform, so long as all RFC limitations are reflected in the hypothetical question propounded to the VE.  *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000).[6]

Here, the ALJ posed a hypothetical question to the VE that matched the RFC set forth above, and the VE identified three unskilled jobs a hypothetical person of Plaintiff's age, education, and work experience could perform: small products assembler, mailroom clerk, and price marker.  (R. 66–68.)  The VE testified there were 22,000 small products assembler jobs; 18,000 mailroom clerk jobs; and 100,000 price marker jobs in the national economy.  (R. 67.)  Based on this testimony, the ALJ concluded Plaintiff could perform jobs that existed in significant numbers in the national economy.  (R. 25–26.)  The ALJ also determined that the VE's testimony was consistent with information contained in the Dictionary of Occupational Titles ("DOT").  (R. 26.)

---

[6] In *Qualls*, the court found that where the ALJ "propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment," "the VE's answer to that question provided a proper basis for the ALJ's disability decision."  *Id.*

6

### 2. Conflict Between the DOT and the VE's Testimony

While an ALJ can rely on the VE's testimony at step five, this reliance has its limits. An ALJ has a duty to develop the record, which includes questioning the VE about the source of their opinions and any deviations from publications like the DOT. *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999). As such, "the ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Id.*; *see also* Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) ("When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a . . . decision about whether the claimant is disabled.").

In this case, there is an apparent conflict between the VE's testimony and the DOT's assigned "reasoning level" for the mailroom clerk job. The DOT appends a "definition trailer" to each job, which is comprised of selected occupational characteristics, including the General Educational Development ("GED") Scale. *See* DOT, App. C, 1991 WL 688702 (4th ed. 1991). The GED Scale is divided into three subparts: Reasoning Development, Mathematical Development, and Language Development. *Id.* There are six levels for each GED Scale subpart, with level one representing the lowest development level and level six representing the highest. *Id.* The DOT assigns the job of mailroom clerk a Reasoning Development level of three. *See* DOT § 209.687-026, 1991 WL 671813 (4th ed. 1991). This means the job requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and

"[d]eal with problems involving several concrete variables in or from standardized situations." *Id.*

As the Commissioner seems to acknowledge, the Tenth Circuit has recognized an apparent conflict between jobs requiring level-three reasoning and an RFC limitation to "simple instructions." *Paulek v. Colvin*, 662 F. App'x 588, 594 (10th Cir. 2016) (unpublished). In *Paulek*, the claimant could "understand, remember and carry out simple instructions," *id.* at 591, but the jobs identified at step-five required a reasoning level of three, *id.* at 594. Determining whether a conflict existed, the Court outlined the DOT requirements for level three reasoning and noted the Tenth Circuit's previous holding that "a limitation to 'simple and routine work tasks . . . seems inconsistent with the demands of level-three reasoning.'" *Id.* (*quoting Hackett*, 395 F.3d at 1176). Extending the *Hackett* finding from "tasks" to "instructions," the court found a conflict between "simple instructions" and level-three reasoning. *Id.*

Once it appears there is a conflict between the VE's testimony and the DOT, the ALJ must resolve that conflict in a reasoned manner—and not with a generalized affirmation that there are "no conflicts." Rather, the ALJ "must explain the resolution of the conflict irrespective of how the conflict was identified." SSR 00-4p, at *4; *see also Haddock*, 196 F.3d at 1090 ("To allow an ALJ to elicit and rely on summary conclusions given by a VE, in the absence of contrary testimony elicited by the claimant through cross-examination, would amount to shifting the burden to produce and develop vocational evidence back to the claimant."). Or, as the Social Security Administration's Ruling states,

> In these situations, the adjudicator will:
>
> Ask the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT;

8

> <u>and</u>
>
> If the VE's . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p, at *4 (emphasis added).

Here, the ALJ addressed the first question, but did not proceed to step two and obtain a reasonable explanation regarding the conflict. At the hearing, the ALJ asked whether the VE's testimony "will be consistent with the DOT," to which the VE responded that it would. (R. 65–66.) The VE, however, did not raise the apparent conflict with the GED reasoning level, and the ALJ did not inquire about it. (R. 65–68.) Because the ALJ was required to, but did not, elicit additional testimony from the VE explaining how Plaintiff can perform level-three reasoning with an RFC limitation to simple instructions, he erred in determining that Plaintiff could perform the job of mailroom clerk. As the Tenth Circuit explained in *Paulek*,

> Though the ALJ asked the VE whether his testimony was consistent with the *DOT*, it clearly was not . . . . Thus, there is a conflict between the VE's testimony and the job descriptions in the DOT . . . . The ALJ failed to have the VE reconcile this conflict and therefore committed reversible error. On remand, to comply with *Haddock*, the Commissioner will need to elicit a reasonable explanation as to how [the claimant] can perform two level-three-reasoning jobs with a limitation to carrying out simple instructions . . . .

*Paulek*, 662 F. App'x at 594. The ALJ's step-five determination as to the mailroom clerk job was not supported by substantial evidence.

**B.    Sufficient Number of Jobs in the National Economy**

Having found an unresolved apparent conflict between the RFC and one of the jobs identified by the VE, the Court must now examine whether the ALJ's step-five error was harmless. The Commissioner contends that it was, because 122,000 jobs remain nationally. (ECF No. 11 at 21–22.) The Court disagrees.

9

Under the Act, work exists in significant numbers in the national economy when it exists in such numbers either in the region where the claimant lives or in several other regions of the country. 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 404.1566(a). Determining what constitutes a significant number of jobs is normally a question of fact for the ALJ to decide based on "common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004) (quoting *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992)). Here, the ALJ did not find that the 122,000 remaining jobs were significant numbers in the national economy. Instead, the ALJ found that, overall, there were sufficient jobs, citing a combined total of 140,000. (R. 25–26.)

A reviewing court may supply a missing dispositive finding of fact under the rubric of harmless error where "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen*, 357 F.3d at 1145. However, this Court must be cautious in "deciding in the first instance that a particular number was significant under the circumstances," because it must "avoid usurping the administrative tribunal's responsibility to find the facts" and must not violate "the general rule against post hoc justification of administrative action . . . ." *Id*. at 1144–45. The Commissioner claims the Tenth Circuit—in an unpublished opinion—has affirmed significant number findings "based on far lower remaining numbers" than the 122,000 at issue here (ECF No. 11 at 22 (citing *Jimison ex rel Sims v. Colvin*, 513 F. App'x 789, 794 (10th Cir. 2013)), but the Commissioner misreads *Jimison*.

The Tenth Circuit has held that an ALJ's erroneous inclusion of conflicting jobs at step five is harmless error where the remaining nonconflicting jobs exist in sufficiently significant numbers in the national economy. *See, e.g.*, *Raymond v. Astrue*, 621 F.3d

10

1269, 1274 (10th Cir. 2009) (finding 1.34 million remaining jobs in the national economy significant); *Shockley v. Colvin*, 564 F. App'x 935, 940 (10th Cir. 2014) (unpublished) (215,000 remaining jobs); *Johnson v. Comm'r*, 764 F. App'x 754, 761–62 (10th Cir. 2019) (unpublished) (178,000 remaining jobs); *Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (152,000 remaining jobs). These numbers have consistently been higher than the 122,000 in this case. In fact, three years after *Jimison* was issued, the Tenth Circuit noted that the finding in *Stokes*—152,000 remaining jobs—was the lowest number it had found to satisfy the harmless error analysis. *See Evans v. Colvin*, 640 F. App'x 731, 736 (10th Cir. 2016) ("[T]here is no bright-line answer to how many jobs are enough for a court to say, as a matter of law, that the number is significant, but the number appears to be somewhere between 100 [statewide], the number of jobs in *Allen* that we refused to consider significant for harmless-error purposes, and 152,000 [nationally], the lowest number of jobs we have considered (in *Stokes*) to be sufficient so far for application of harmless error.") This tracks with what other, unpublished opinions had found previously. *See Norris v. Barnhart*, 197 F. App'x 771, 777 (10th Cir. 2006) (unpublished) (declining to find, as a matter of law, that two remaining positions—one with 65,000–85,000 jobs and one with 125,000 jobs—existed in significant numbers in the national economy). Based on these cases, this Court—and others in the Northern District of Oklahoma—have declined to find similar numbers significant as a matter of law. *See, e.g.*, *James A. M. v. Kijakazi*, No. 20-CV-00372-JED-SH, 2022 WL 1510563, at *7 (N.D. Okla. Jan. 26, 2022) (128,000 remaining jobs), *R&R accepted*, 2022 WL 1014952 (Apr. 5, 2022); *Kimberly H. F. v. O'Malley*, No. 23-CV-33-JFJ, 2024 WL 659494, at *4–5 (N.D. Okla. Feb. 15, 2024) (116,000 remaining jobs); *Terry T. v. Saul*, No. 19-CV-0684-CVE-

CDL, 2021 WL 981284, at *5 (N.D. Okla. Mar. 16, 2021) (108,000 remaining jobs). The undersigned makes no exception here.

Nor does *Jimison* require a contrary result. In *Jimison*, the district court found that "there was no reversible error because the other job . . . existed in large numbers (6,000 regionally and 80,000 nationally, according to the VE), and that this was sufficient to fulfill the Commissioner's step-five burden . . . ." 513 F. App'x at 794. The Tenth Circuit agreed that the job "fulfilled the Commissioner's step-five burden," citing *Trimiar* for the proposition that "650–900 in-state jobs [is] a significant regional number." *Id.* (citing *Trimiar*, 966 F.2d at 1329–32).[7] The Tenth Circuit did not, however, find that 80,000 jobs in the national economy was significant as a matter of law. *See also A. M. v. Kijakazi*, No. 20-CV-0372-NDF-SH, 2022 WL 1014952, at *3 (N.D. Okla. Apr. 5, 2022) ("The circuit in *Jimison* affirmed the district court not based on the total number of national jobs, but rather specifically relying on the regional job number.").

As such, given the Tenth Circuit's preference that the ALJ evaluate numerical significance in the first instance and that the district court supply dispositive findings only in exceptional circumstances, the undersigned declines to apply the harmless error standard and conclude that 122,000 jobs in the national economy is a significant number as a matter of law, such that "no reasonable administrative factfinder . . . could have

---

[7] *Trimiar* involved a question of whether there was substantial evidence to support the ALJ's determination that this number of jobs was significant—not whether the reviewing Court could determine, as a matter of law, that such number was always significant. 966 F.2d at 1330. To the extent *Jimison* conflates these two, very different, analyses, the undersigned does not find it persuasive. *See Allen*, 357 F.3d at 1144 (noting the distinction between cases involving court review of a finding of numerical significance versus deciding in the first instance that a particular number was significant).

resolved the factual matter in any other way."[8] *Allen*, 357 F.3d at 1145. Consequently, the ALJ's error at step five was not harmless.

## VI. Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **REVERSED AND REMANDED** for proceedings consistent with this Opinion and Order.

**SO ORDERED** this 18th day of September, 2024.

_____
SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[8] For these same reasons, the undersigned is not persuaded by the Commissioner's efficiency arguments. (ECF No. 11 at 22 (noting the large number of pending social security claims).) While it may be true that remanding on these grounds will prolong final resolution of the matter—as is true in *all* remanded cases—this does not give the Court the power to make fact-finding decisions that the Tenth Circuit has indicated should be left to the ALJ. The undersigned declines to overstep its authority in the name of efficiency.